ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| LEARSI BERRÍOS TOSSES<br><br>Recurrida<br><br>v.<br><br>ALFREDO COLÓN MATOS<br><br>Peticionario | KLCE202400676 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.:<br>E D12017-0431<br><br>Sobre:<br>Divorcio<br>(Ruptura Irreparable) |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 27 de junio de 2024.

Comparece Alfredo Colón Matos (en adelante, peticionario y/o señor Colón Matos) mediante un recurso de *Certiorari* para solicitarnos la revisión de la *Orden* emitida el 1 de abril de 2024, y notificada el 4 del mismo mes y año, por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, TPI).[1] Mediante dicha *Orden,* el foro primario refirió el caso a la Examinadora de Pensiones Alimentarias (EPA) para una revisión de pensión alimentaria. De dicha *Orden* Learsi Berrios Tosses (en adelante, señora Berríos Tosses y/o recurrida) solicitó la reconsideración,[2] la cual fue declarada *Ha Lugar* por el TPI, mediante *Resolución* emitida el 16 de abril de 2024, y notificada el 23 del mismo mes y año,[3] por lo que se dejó sin efecto la vista ante la EPA y se mantuvo la pensión alimentaria fijada mediante *Resolución* del 11 de octubre de 2023. En desacuerdo con lo resuelto, el peticionario presentó una solicitud

---

[1] Apéndice del recurso, a la pág. 249.
[2] *Íd.,* a las págs. 251-256.
[3] *Íd.,* a las págs. 257-258.

Número Identificador

RES2024_____

de reconsideración,[4] la cual fue denegada mediante *Resolución* emitida el 10 de mayo de 2024, notificada el 17 de mayo de 2024.[5]

Por los fundamentos que expondremos, se *deniega* la expedición del auto de *Certiorari.*

I

Producto de la relación matrimonial entre las partes, nació el menor A.N.C.B. (en adelante, Menor), quien, a esta fecha, cuenta con nueve (9) años de edad.[6] Conforme se desprende de los autos, la patria potestad es compartida entre ambos progenitores, mientras que la custodia la ostenta la madre, de manera exclusiva.  Las partes culminaron su relación matrimonial mediante *Sentencia* de divorcio, emitida el 31 de agosto de 2017.[7] Como parte de los trámites de la acción de divorcio, las partes lograron un acuerdo sobre pensión alimentaria final, el cual fue autorizado por el foro primario y ordenado en la misma *Sentencia* de divorcio.[8]

Luego de varias instancias procesales, allá para julio del año 2020, la señora Berríos Tosses presentó una *Solicitud de revisión de pensión alimentaria.*[9] En respuesta, el foro primario refirió el caso a la Examinadora de Pensiones Alimentarias (EPA).[10] De ahí, la EPA celebró varias vistas en las cuales las partes acordaron modificar de forma provisional la pensión alimentaria y el foro primario así lo autorizó y ordenó. Conviene mencionar que, cuando comenzó el proceso de revisión de pensión alimentaria, dio inicio el descubrimiento de prueba, empero, posteriormente, allá para febrero de 2022, el señor Colón Matos admitió capacidad económica. Pasado algún tiempo, informó en corte abierta su interés en retirar la referida admisión, para lo cual se le requirió presentar su solicitud

---

[4] Apéndice del recurso, a las págs. 263-264.
[5] *Íd.*, a las pág. 265-266.
[6] El Menor nació el 19 de junio de 2015.
[7] Apéndice del recurso, a las págs. 002-C-002-D.
[8] *Íd.*, a la pág. 0002-D.
[9] *Íd.*, a las págs. 003-A-003-B.
[10] *Íd.*, a la pág. 004.

por escrito, gestión que no surge de los autos se realizó. Dado a que el señor Colón Matos no presentó el aludido escrito, el foro primario dispuso que se continuarían los procesos bajo la aceptación de capacidad económica.[11] Luego, el 29 de agosto de 2023, se celebró la vista final ante la EPA.[12] Allí se desfiló prueba y el caso quedó sometido.

Así las cosas, y previo a que el TPI recibiese el Informe de la EPA (Informe y Recomendaciones) sobre la vista final de revisión de pensión alimentaria, el 14 de agosto de 2023, el señor Colón Matos presentó una *Solicitud urgente de rebaja de pensión.*[13] Acotó que ya no podía "seguir pagando la pensión alimentaria sin que se le afectara la reserva", por lo que solicitaba que su caso fuese referido a la EPA para una revisión de pensión alimentaria.[14]

Finalmente, producto de una última vista ante la EPA, celebrada el 29 de agosto de 2023, la EPA rindió el Informe y Recomendaciones con las correspondientes determinaciones de hecho y conclusiones de derecho, así como sus recomendaciones sobre pensión alimentaria. Dicho Informe y Recomendaciones fue sometido ante la consideración del TPI el 5 de octubre de 2023.[15] Recibido el Informe y Recomendaciones,[16] el tribunal *a quo* mediante *Resolució*n, emitida el 11 de octubre de 2023,[17] notificada al día siguiente, adoptó el mismo y declaró *Ha Lugar* la solicitud de revisión de pensión alimentaria instada por la señora Berríos Tosses. En consecuencia, impuso al señor Colón Matos una pensión alimentaria permanente de $3,479.80, efectiva al 16 de julio de 2020.

---

[11] Apéndice del recurso, a la pág. 212.
[12] *Íd.,* a la págs. 222-226.
[13] *Íd.,* a las págs. 196-197.
[14] *Íd.,* a la pág. 196.
[15] *Íd.,* a las págs. 222-226. El Informe de la EPA fue rendido el 29 de agosto de 2023, reducido a escrito el 5 de octubre de 2023. Apéndice a la pág. 226.
[16] Apéndice del recurso, a las págs. 222-226.
[17] *Íd.,* a las págs. 220-221.

Posteriormente, el 10 de enero de 2024, la señora Berríos Tosses presentó una *Moción de desacato y sobre retroactivo.*[18] En el escrito, indicó que luego de aplicar los pagos que recibió, desde el 16 de julio de 2022 hasta el 31 de diciembre de 2023, se desprendía que el señor Colón Matos debía una cantidad por concepto de retroactivo de pensión alimentaria que ascendía a $116,701.60. A su vez, afirmó que, desde septiembre de 2023, el peticionario no había emitido ningún pago de pensión. Por su parte, el 20 de febrero de 2024, el señor Colón Matos presentó una *Oposición a Moción de desacato y sobre retroactivo.*[19] En su escrito, fijó posición en torno a la solicitud presentada por la recurrida, en especial su insatisfacción con lo alegado por entender, en síntesis, que era injusto, dado a que no contaba con la capacidad económica para sufragarlos. Así, pues, solicitó término para que las partes pudiesen resolver el asunto.

Luego, el 22 de febrero de 2024, las abogadas del señor Colón Matos presentaron una *Solicitud de relevo de representación legal.*[20] Al día siguiente, el señor Colón Matos, por derecho propio, presentó una nueva *Solicitud de rebaja de pensión* alimentaria.[21] Expuso que sus ingresos habían disminuido de manera considerable y que su situación financiera le impedía continuar pagando la pensión alimentaria sin afectar sus necesidades básicas y su estabilidad económica. A tenor, solicitó que se atendiera su solicitud de rebaja de pensión alimentaria. En respuesta a estos dos (2) petitorios, el foro primario, mediante *Orden,* emitida el 26 de febrero de 2024, notificada el 5 de marzo del mismo año, concedió el relevo de representación legal y ordenó al señor Colón Matos a presentar evidencia de su reducción de ingresos.[22] En cumplimiento con lo anterior, el 25 de marzo de 2024, el señor Colón Matos presentó una

---

[18] Apéndice del recurso, a las págs. 227-230.
[19] *Íd.,* a las págs. 233-236.
[20] *Íd.,* a las págs. 237-238.
[21] *Íd.,* a la pág. 239.
[22] *Íd.,* a la pág. 240.

*Moción en cumplimiento.*[23] Allí, informó que estaba presentando con su escrito, su Planilla de Contribución sobre Ingresos del año 2023 (Planilla).[24] Días más tarde, y en respuesta, mediante *Orden* emitida el 1 de abril de 2024, notificada el 4 del mismo mes y año, el foro primario refirió el caso a la EPA para una revisión de pensión.[25] Subsiguientemente, mediante notificación del 8 de abril de 2024, el tribunal de instancia señaló la vista de revisión de pensión alimentaria y concedió término para que las partes presentaran las correspondientes PIPE.

Disconforme con lo dispuesto por el foro *a quo*, el 16 de abril de 2024, la señora Berríos Tosses presentó una *Solicitud de Reconsideración.*[26] Arguyó, en síntesis, que, durante el trámite del caso -*de revisión de pensión alimentaria*-, el señor Colón Matos no cumplió con el descubrimiento de prueba y que fue allá para febrero de 2022, que admitió capacidad económica. Acotó que, durante una vista celebrada en mayo de 2023, intentó verbalmente retirar su aceptación de capacidad económica, empero nunca presentó su solicitud por escrito. Expuso, además, que, tras el señor Colón Matos haber aceptado capacidad económica, no había provisto evidencia sobre sus ingresos. Arguyó que la mera presentación de la Planilla del año 2023 no era suficiente para constatar ni contrastar el alegado cambio sustancial en las circunstancias económicas del peticionario. A tenor, razonó que no procedía el referido a la EPA. En respuesta, mediante *Resolución* emitida el 16 de abril de 2024, notificada el 23 de abril de 2024, el TPI dispuso "Ha Lugar la Reconsideración. Se deja sin efecto el referido a la Examinadora de Pensiones Alimentarias y se mantiene la Resolución dictada el 11 de octubre de 2023."[27]

---

[23] Apéndice del recurso, a las págs. 241-248.
[24] *Íd.,* a las págs. 242-248.
[25] *Íd.,* a la pág. 249.
[26] *Íd.,* a las págs. 251-256.
[27] *Íd.,* a la pág. 258.

Inconforme con el giro tomado por el foro primario, el 8 de mayo de 2024, el señor Colón Matos presentó una *Moción de Reconsideración*,[28] en la cual expuso que en varias ocasiones había expresado al TPI el alegado cambio sustancial en sus circunstancias económicas.[29] En respuesta, mediante *Resolución* emitida el 10 de mayo de 2024, notificada el 17 de mayo de 2024, el TPI denegó la solicitud de reconsideración del señor Colón Matos.[30]

Aun en desacuerdo, el 17 de junio de 2024, compareció el señor Colón Matos mediante una *Petición de Certiorari,* en la cual alzó el siguiente error:

> **Primer Error:** Erró el Tribunal de Primera Instancia al privar al recurrente de su debido proceso de ley en su vertiente procesal, al dejar sin efecto el referido a la Examinadora de Pensiones Alimentarias, sin la celebración de una vista para demostrar que existe justa causa para su solicitud de revisión de alimentos ante su cambio sustancial de circunstancias económicas de conformidad con lo establecido en la Ley de Sustento de Menores.

El 26 de junio de 2024, compareció la parte recurrida mediante *Oposición a que se expida auto de certiorari.* Con el beneficio de la comparecencia de ambas partes, procederemos a exponer el derecho aplicable.

II

### A. Expedición del Recurso de *Certiorari*

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de Procedimiento Civil.[31] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

[...].

---

[28] Apéndice del recurso, a las págs. 263-264.
[29] *Íd.,* a la pág. 264.
[30] *Íd.,* a las págs. 265-266.
[31] 32 LPRA Ap. V, R. 52.1.

> El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, **en casos de relaciones de familia**, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> […]. [32]

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

> […].
>
> (b) *Recurso de "certiorari"*. Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.[33]
>
> […]

El recurso de *Certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[34] A diferencia del recurso de apelación, el auto de *Certiorari* es de carácter discrecional.[35] Expedir el recurso "no procede cuando existe otro recurso legal que protege rápida y eficazmente los derechos de la parte peticionaria".[36] Conviene

---

[32] *Íd.* (Énfasis nuestro).
[33] 32 LPRA Ap. V, R. 52.2 (b).
[34] *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).
[35] *Rivera Figueroa v. Joes's European Shop,* 183 DPR 580, 596 (2011).
[36] *Íd.*

desatacar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[37] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[38]

**A pesar de que este Tribunal está autorizado para atender asuntos de relaciones de familia mediante un recurso de *certiorari*, esta intervención no opera de manera automática,** la Regla 40 del Reglamento del Tribunal de Apelaciones[39], esboza los criterios que el Tribunal deberá considerar para expedir un auto de *Certiorari.*

El Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo) ha establecido que un tribunal revisor no debe sustituir circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[40] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción; o, (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[41]

Por último, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos. Meramente, responde a la facultad discrecional del

---

[37] *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013).
[38] *Íd.*
[39] 4 LPRA Ap. XXII-B, R.40.
[40] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[41] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia.[42]

III

Habida cuenta de que el recurso ante nuestra consideración se trata de un *Certiorari*, este tribunal revisor debe determinar, como cuestión de umbral, si procede su expedición. En el presente caso, el peticionario sostiene que el foro primario erró al dejar sin efecto el referido a la EPA, sin antes celebrar una vista para indagar si, en efecto, sus circunstancias económicas habían sufrido un cambio sustancial.

Como es sabido, un tribunal apelativo no intervendrá con el ejercicio de la discreción de los Tribunales de Primera Instancia, salvo que se demuestre que dicho tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[43] Puntualizamos, que el *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior.[44] A esos efectos, la naturaleza discrecional del recurso de *Certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección. Por ello, aunque la Regla 52.1 de Procedimiento Civil[45] permite que mediante auto de *Certiorari* intervengamos en asuntos sobre relaciones de familia, esta Regla no opera en el vacío, tiene que anclarse en una de las razones de peso que establece la Regla 40 del Reglamento del Tribunal de Apelaciones.[46]

---

[42] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008)
[43] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[44] *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[45] 32 LPRA Ap. V, R. 52.1.
[46] 4 LPRA Ap. XXII-B, R.40.

Tras evaluar minuciosamente el recurso presentado por el peticionario, y luego de una revisión de la totalidad del expediente ante nos, juzgamos que no procede la expedición del auto de *Certiorari* solicitado. Es nuestra apreciación que no se configuran ninguna de las instancias que justificaría la expedición del auto de *Certiorari* al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones.[47] El señalamiento de error y los fundamentos aducidos en la petición presentada no logran activar nuestra función discrecional en el caso de autos. Por tanto, entendemos que esta no es la etapa del procedimiento más propicia para nuestra consideración; y, tampoco estamos ante una determinación que configure abuso de discreción, prejuicio, parcialidad o error craso y manifiesto que amerite nuestra intervención revisora. El dictamen recurrido no es patentemente erróneo, y encuentra cómodo resguardo en la sana discreción de la primera instancia judicial. Además, razonamos que el peticionario no nos ha persuadido de que, al aplicar la norma de abstención apelativa en este momento, conforme al asunto planteado, constituirá un rotundo fracaso de la justicia. Por todo lo antes mencionado, no atisbamos razón para intervenir con la determinación recurrida.

Lo aquí resuelto, advertimos, no tiene efecto de juzgar o considerar en los méritos ninguna de las controversias de derecho planteadas por las partes, de modo que estas podrían ser planteadas nuevamente en una etapa posterior. Es decir, la denegatoria de esta Curia a expedir un recurso de *Certiorari* no implica que el dictamen revisado esté libre de errores o que constituya una adjudicación en los méritos.[48] Esto es así, ya que, como es sabido, una resolución de denegatoria de un auto de *Certiorari* no implica posición alguna de este Tribunal respecto a los méritos de la causa sobre la cual trata

---

[47] 4 LPRA Ap. XXII-B, R. 40.
[48] *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 12 (2016).

dicho recurso.[49] La resolución denegatoria simplemente es indicio de la facultad discrecional del tribunal revisor de negarse a revisar en determinado momento una decisión emitida por el TPI. [50]

IV

Por los fundamentos que anteceden, se *deniega* la expedición del auto de *Certiorari.*

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[49] *SLG v. Pauneto Rivera,* 130 DPR 749, 755 (1992).
[50] *Íd.,* 756.